IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARIBBEAN PETROLEUM CORP.<br>Plaintiff<br>vs<br>INTERNATIONAL INDUSTRIES CORPORATION<br>Defendant and Third-Party Plaintiff<br>vs<br>CEDAR ENTERPRISES, INC.;<br>STEVE MOKALLED<br>Third-Party Defendants | CIVIL 09-1458CCC |

## OPINION AND ORDER

The diversity action before us arises from an alleged breach of contract between plaintiff Caribbean Petroleum Corporation (CPC), a wholesaler of petroleum and its derivatives, with its principle place of business in Puerto Rico and defendant International Industries Corporation (International), a South Carolina corporation engaged in the business of international sales, which include lubricant oils that are manufactured for them (Complaint, ¶3). The suit centers around an allegedly defective product sold by defendant to plaintiff that purportedly was causing damage to vehicles of CPC customers. The dispute that followed can be summarized by the allegations in ¶¶19-22 of the complaint:

> 19. As averred herein, the product was paid for in advance and a defective product was sent by [International] waited for months after CPC had reported how this sub-quality product had damaged various vehicles to recall it.
>
> 20. [International] has not made any effort whatsoever to commit to reimbursement of any amount to CPC, nor to a schedule and manner of reimbursement.
>
> 21. After almost two years not even half of the returned product has been replaced or monies returned.
>
> 22. [International] owes CPC an amount [of] no less than $600,000.00 attributable to reimbursement and related expenses for a defective product shipment, made during late 2006, amount which IIC specifically agreed to reimburse.

Defendant filed a third-party complaint against Cedar Enterprises, Inc., its supplier of the

CIVIL 09-1458CCC                              2

product in question and Steve Mokalled, Cedar's president, (collectively referred to as "Cedar") alleging (1) negligence in the production and blending of the product that International sold and shipped to CPC, (2) breach of Cedar's contract with International for the procurement of the product shipped by it to CPC, and, (3) breach of warranty based on the alleged implied warranty made to International that Cedar's products would be provided free from defects.

Before the Court is Cedar and Mokalled's Motion to Dismiss the Third-Party Complaint(**docket entry 17**) on the basis that they do not have sufficient minimum contacts with Puerto Rico to justify this Court's exercise of personal jurisdiction over them. Third-party defendant International opposed the motion (docket entry 19) and Cedar and Mokalled requested leave to reply and tendered a reply motion.[1]

The concept of sufficient minimum contacts with the forum so as to allow the exercise of jurisdiction over an out-of-state defendant in accordance with the Due Process Clause was initially addressed by the Supreme Court in International Shoe Company v. Washington, 326 U.S. 310,316 (1945). Such "minimum contacts" must be substantial enough to comport with traditional notions of "fair play and substantial justice." Burger King Corp. V. Rudzewicz, 471 U.S. 462, 476 (1985).

Cedar's motion, supported by Mokalled's affidavit as president and owner of the company, refutes any of the traditional minimum contacts with Puerto Rico. To wit: Cedar has never operated any facility in Puerto Rico, never applied for or obtained any kind of license in Puerto Rico, never designed a product for use in Puerto Rico, nor directly or through any agent or representative ever conducted or carried out any business in Puerto Rico, advertised here, never owned or leased any property in Puerto Rico, had any bank accounts or maintained any offices, or otherwise directed any of their business activity toward Puerto Rico.

In its opposition, at page 2, International avers that Cedar "was informed initially of the ultimate buyer's location and the ultimate destination of the Gulf labeled products...," "that Cedar affirmed that it had sold products for ultimate destination to Puerto Rico through another customer

---

[1]The Motion for Leave to File Reply Brief (**docket entry 21**) is GRANTED. The Clerk of Court shall file the tendered reply.

CIVIL 09-1458CCC                                           3

(ABRO) prior to its relationship with International." International also avers that, pursuant to Rule 4.7(a)(1) of the Puerto Rico Rules of Civil Procedure, Cedar had "transacted business in Puerto Rico personally or through an agent." In attempting to present itself as the "de-facto agent of [Cedar] in marketing and selling products in Puerto Rico," International points to the fact that Cedar had <u>previously sold and shipped to a client in Indiana</u>, ABRO, that, in turn, resold the products in Puerto Rico. (Opposition, at 6.)     A variation of this line of reasoning is International's contention that there are minimum contacts because Cedar allegedly "held itself out as knowledgeable of the market and the product" on account of its prior sales to ABRO. <u>Id</u>., at 7.  In sum, International argues that Cedar's knowledge that products which Cedar sells to customers who will, in turn, ultimately sell them in this jurisdiction, constitutes a contact with the forum of such substance that Cedar is subject to Puerto Rico's long arm statute.

**Personal Jurisdiction Requirements**

It is the plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. <u>United States v. Swiss American Bank, Ltd.</u>, 274 F.3d. 610, 618 (1st Cir. 2001).

> Puerto Rico's long- arm statute allows Puerto Rico courts to exercise jurisdiction over a non-resident defendant if the action arises because that person:  (1) transacted business in Puerto Rico personally or through an agent; or (2) participated in tortious acts within Puerto Rico personally or through his agent. We have noted that the reach of Puerto Rico's long-arm statute stretches up to the point allowed by the Constitution.

<u>Negrón-Torres v. Verizon Communications, Inc</u>, 478 F.3d. 19, 24 (1st Cir. 2007).

"The due process clause imposes several requirements on the exercise of personal jurisdiction over out-of-state defendants." <u>Harlow v. Children's Hospital</u>, 432 F.3d. 50, 57 (1st Cir. 2005). First, in order for the Court to exercise personal jurisdiction over an out-of-state defendant, the Due Process Clause requires that the defendant have <u>sufficient</u> minimum contacts with the forum, such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.  <u>See</u>, <u>Adams v. Adams</u>, 601 F.3d 1, 5 ( 1st Cir. 2010).  For specific personal jurisdiction, the plaintiff's claim must arise directly out of, or relate to the defendant's forum-based

CIVIL 09-1458CCC                              4

contacts, which is what is alleged here. A court has general jurisdiction, when the cause of action is not directly founded on the defendant's forum-based contacts, but the defendant has, nevertheless, engaged in continuous and systematic activity, unrelated to the suit, in the forum state. Harlow, supra, at 57. The standard for evaluating whether contacts satisfy the constitutional general-jurisdiction test is considerably more stringent than that applied to specific jurisdiction questions. Id., at 64. Second, for either type of jurisdiction, the defendant's contacts with the state must be purposeful. And third, the exercise of jurisdiction must be reasonable under the circumstances. Id., at 57.

**Specific Personal Jurisdiction**

The constitutional analysis for specific personal jurisdiction is divided into three categories: relatedness, purposeful availment, and reasonableness, all of which the plaintiff must demonstrate. See, Phillips v.Praire Eye Center, 530 F.3d. 22, 27 (1st Cir. 2008); Negrón Torres, supra, at 24.

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007) citing Daynard v Ness Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 60 (1st Cir. 2002).

The relatedness prong requires that the evidence produced to support specific jurisdiction show that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts. Phillips, supra, at 27. There must be more than just an attenuated connection between the contacts and the claim; the defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case.

Purposeful availment rests on the elements of voluntariness and foreseeability.

> The focus of the purposeful inquiry is intentionality. This prong is satisfied only when a defendant purposefully and voluntarily directs his activities toward a forum so that he should expect, by virtue of the benefit he receives, to be subject

CIVIL 09-1458CCC                             5

>   to a court's jurisdiction based on these contacts. . . . Voluntariness requires that the defendant's contacts with the forum state proximately result from actions by the defendant himself. The contacts must be deliberate, and not based on the unilateral actions of another party. Foreseeability requires that the contacts with the forum state be of a nature that the defendant could "reasonably anticipate being haled into court there.

Adams v. Adams, 601 F.3d. 1, 6-7 (1st Cir. 2010). (Citations omitted.)

To evaluate the reasonableness requirement the Supreme Court has provided a set of "Gestalt factors" to consider. Astro-Med, Inc. V. Nihon Kohden America, Inc., 591 F.3d. 1, 10 (1st Cir. 2009). These factors include:

>   the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

Burger King Corp. v. Rudzewics, 471 U.S. 462, 477 (1985).

**Specific Jurisdiction Analysis**

Neither in its opposition nor in the statement of International's president and owner David Cloer, does International dispute Mokalled's statement that International purchased and accepted delivery of the products at Cedar's Georgia facilities. The fact that the products were labeled for shipment to CPC, only reflects that International's stateside purchases would be shipped to its customer CPC's facility in Puerto Rico. Knowledge that some of Cedar's products were being re-sold to an International client in Puerto Rico, and that Cedar had previously sold goods to a totally unrelated entity, ABRO, in Indiana, which, in turn, sold them to its own client in Puerto Rico, is not enough, on its own, to create specific personal jurisdiction over a defendant. Id., at 28.

>   When a plaintiff tire manufacturer argued that a defendant rim manufacturer was subject to personal jurisdction in Puerto Rico, we noted that even if the defendant had specific knowledge that the stream of commerce would move its tire rims into Puerto Rico, "awareness alone would not be enough to constitute the purposeful availment which is necessary for a showing of minimum contacts."

Id., at 28-29, quoting Rodríguez v. Fullerton Tires Corp., 115 F.3d. 81, 85 (1st Cir. 1997).

When International states that plaintiff CPC entered into a contract to purchase oil products from it, which, in turn, by virtue of its own contract with Cedar, resulted in its placing an order with

CIVIL 09-1458CCC                                  6

Cedar in South Carolina or its facilities in Georgia, there is no allegation or reference to evidence that places Cedar in direct contact with CPC.

International's repetitious self-characterization as Cedar's "agent," is a legal conclusion, unsupported by concrete factual allegations that are relevant to the jurisdictional inquiry. Thus, under the pleading standards for a motion to dismiss, the same need not be taken as true. Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2008). (The tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions.) See, also, Iqbal v. Ashcroft, 129 S.Ct. 1937, 1949 (2009). After removing this "agency" concept we are left with the following factual allegations:

> "When initial complaints were received from Caribbean to International, [Cedar] processed them as warranty claims. As a result, [Cedar] instructed International . . . to have the product sent back to its plant in Georgia from Puerto Rico for **repair** (**re-blend**) or for refund of money paid. International declined financial responsibility . . ., but [Cedar] agreed to repay International the **freight** for such activities.

Opposition, at 3. (Our emphasis.)

There is absolutely no concrete factual allegation to support International's non-sequitur that: "Relying upon [Cedar]'s prior market experience and sales knowledge of the Puerto Rico market, International acted as a de-facto agent for Cedar to re-enter the Puerto Rican market as a packer of product." Id. at 6. Cedar's lack of a presence in Puerto Rico is demonstrated in International's next paragraph:

> Subsequently, when product warranty claims began to be filed by [CPC] with International, International reverted to Cedar to find a suitable solution to the problem and to provide customer service to Caribbean. Cedar agreed to send its own employees to Puerto Rico to remix the oil on station but ultimately decided to have CPC ship the oil directly to its plant in Valdosta, GA for recovery.[2]

Id., at 7. (Our emphasis.)

---

[2]CPC avers, at ¶10 of its complaint, "As such, the defective product was returned, per International's instructions . . . " and, at ¶27, "As such, given that the product delivered by International...." (Our emphasis.)

CIVIL 09-1458CCC                               7

   The allegedly defective products were returned to Georgia.  The fact that International's customer shipped the warranted goods directly back to the stateside manufacturer, rather than to its distributor, does not create a presence in Puerto Rico for Cedar.

   International argues that "This is not a case of a company (International) simply buying goods from another company (Cedar) and reselling them to a third party (Caribbean) in a foreign jurisdiction."  But, in fact, this is exactly what it is.  International purchased the products from Cedar's Georgia facilities and made its own arrangements for shipping the products to CPC, its customer, in Puerto Rico.  The fact that Cedar had previously sold products to an Indiana company who ultimately sold some of them to a distributor in Puerto Rico is irrelevant to Cedar's contractual relationship with International.  Additionally, as pointed out by Cedar in its reply:

> In his _sworn_ affidavit, International's President and owner, David Cloer ("Cloer"), does not once state the nature of the relationship between International, Cedar, and Mokalled. Importantly, Cloer never states that he or International were employees, agents, or distributors for Cedar or Mokalled.  Nor does he ever state that International was anything more than a customer of Cedar."

International also suggested the presence of general jurisdiction over Cedar and Mokalled. This is based only on the legal conclusion that it is Cedar's agent, or that Cedar does business in Puerto Rico because at some time in the past a Cedar customer resold its products in Puerto Rico.  These arguments have already been discussed and rejected above. Inasmuch as International has not pled or shown any facts supporting the conclusion that Cedar has engaged in continuous and systematic activity in Puerto Rico, his general jurisdiction basis is also non-existent. Reply at 2.  (Emphasis in original.)

   We find that International has demonstrated only that Cedar had knowledge that the products International purchased from it would be shipped to a customer of International in Puerto Rico.  That is, it knew the destination of the product and the identity of the consignee.  As in Fullerton Tires, supra, at 85, such awareness alone is insufficient to constitute the purposeful availment necessary for minimum contacts.  The extensive arguments related to the shipping back and forth of the defective and/or allegedly remixed product reflect that both the warranty agreement and its fulfillment were executed outside of Puerto Rico.  The warranty claims contained in the

CIVIL 09-1458CCC                                              8

third-party complaint are not related nor do they arise from any contacts of Cedar with this jurisidction.

Additionally, there are several reasons why the reasonableness factor weighs against stretching personal jurisdiction in violation of due process to bring Cedar before this Court:

(1)  Both third-party defendants, Cedar and Mokalled, are residents of South Carolina (¶¶ 1 and 2), as is International.

(2) Puerto Rico has no interest in adjudicating the breach of warranty disputes between two South Carolina residents.  The most efficient resolution of such controversies lies in the courts of South Carolina.

(3) It can be inferred from both parties' residency in South Carolina that the contract between them was executed there, and that South Carolina law applies.  If not South Carolina, the contract was executed in another State.  Latin American Music Co., v. American Soc. Of Composers Authors and Publishers, 593 F.3d. 95, 100(1st Cir. 2010) (Ordinarily, unless a contract provides otherwise, it is governed by the law of the state in which is was formed.)  See, also, U.S. Trust Co. of New York v. New Jersey, 431 U.S. 1, 19 n.17(1977).  Additionally, the third-party disputes between citizens of South Carolina arising from alleged manufacturing deficiencies and warranty breaches that occurred in Georgia or South Carolina, based on a contract executed in that state, or some other state, to be interpreted pursuant to the laws of such state, are best litigated in the courts of those states.

CIVIL 09-1458CCC                                    9

Accordingly, for the above-stated reasons, the Motion to Dismiss of Third-Party Defendants Cedar Enterprises and Steve Mokalled (**docket entry 17**) is GRANTED and the Third-Party Complaint is DISMISSED for lack of personal jurisdiction over the third-party defendants.[3]

SO ORDERED.

At San Juan, Puerto Rico, on September 30, 2010.

                                                    S/CARMEN CONSUELO CEREZO
                                                    United States District Judge

---

[3] International also suggested the presence of general jurisdiction over Cedar and Mokalled. This is based only on the legal conclusion that it is Cedar's agent, or that Cedar does business in Puerto Rico because at some time in the past a Cedar customer resold its products in Puerto Rico. These arguments have already been discussed and rejected above. Inasmuch as International has not pled or shown any facts supporting the conclusion that Cedar has engaged in continuous and systematic activity in Puerto Rico, its general jurisdiction basis is also non-existent.